# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| LETICIA WOODS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> JEFFERSON CAPITAL SYSTEMS, LLC, <br><br> Defendant. | Case No.: 17-cv-341 <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Leticia Woods is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect a debt from her allegedly incurred for personal, family or household purposes.

5. Defendant Jefferson Capital Systems, LLC ("Jefferson Capital") is a debt collection agency with its principal offices located at 16 McLeland Road, St. Cloud, MN 56303.

6. Jefferson Capital is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. Jefferson Capital is engaged in the business of a collection agency, in that it purchases and receives assignment of consumer debts that are in default at the time Jefferson Capital acquires them.

8. The FDCPA treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not. 15 U.S.C. § 1692a(6)(F)(iii); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003), *citing Bailey v. Sec. Nat'l Serving Corp.*, 154 F.3d 384, 387 (7th Cir. 1998); *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir. 1998); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403-04 (3d Cir. 2000); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106-07 (6th Cir. 1996); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985).

9. Jefferson Capital uses the mails and telephone to collect consumer debts originally owed to others and currently held by Jefferson Capital. Jefferson Capital is a debt collector under this arrangement. 15 U.S.C. § 1692a(6).

## FACTS

10. On or about March 30, 2016, Jefferson Capital mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to Jefferson Capital and originally owed to "VERIZON WIRELESS." A copy of this letter is attached to this complaint as Exhibit A.

11. Upon information and belief, the alleged debt that Jefferson Capital was attempting to collect was a cellular telephone account, used only for personal, family or household purposes.

12. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

2

13. Upon information and belief, Exhibit A is a form debt collection letter used by Jefferson Capital to attempt to collect alleged debts.

14. Upon information and belief, Exhibit A is the first written communication that Jefferson Capital sent to Plaintiff regarding the alleged debt to which Exhibit A refers.

15. Exhibit A contains the following text:

**NOTICE:** Federal law gives you thirty days after you receive this letter to dispute the validity of the debt or any part of it. If you don't dispute it within that period, we will assume that it's valid.

If you do dispute it — by notifying us in writing to that effect — we will, as required by the law, obtain and mail to you proof of the debt. And if, within the same period, you request in writing the name and address of your original creditor, we will furnish you with that information too.

If you request proof of the debt or the name and address of the original creditor within the thirty-day period that begins with your receipt of this letter, the law requires us to suspend our efforts to collect the debt until we mail the requested information to you.

16. The above language in Exhibit A is the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer. 15 U.S.C. § 1692g.

17. Exhibit A also contains the following settlement offers:

Please consider the following opportunities. Please note that these offers do not affect your rights referenced above.

**OPPORTUNITY #1 - 50% OFFER**
Pay this account with a lump sum payment of $177.27. The amount of the debt is $354.54 and we will accept $177.27.*

**OPPORTUNITY #2 - 60% OFFER**
Pay this account with three payments of $70.87 for a total payment of $212.72. The amount of the debt is $354.54 and we will accept $212.72.*

**OPPORTUNITY #3 - Monthly Payments**
Pay this account with twelve payments of $29.54 a month over the next twelve months for a total payment of $354.54.*
    *After receipt of your payment(s), we will update your account to reflect as paid and close our file.

18. To accept any of the settlement offers in Exhibit A, Plaintiff is required to make a payment. Exhibit A.

19. Exhibit A purports to offer a settlement of a portion of the "amount of the debt."

20. Exhibit A also states "[a]fter receipt of your payment(s), we will update your account to reflect as paid."

3

## *FDCPA Violations*

21. Exhibit A is confusing to the unsophisticated consumer because they demand a payment to settle the debt within the validation period, but do not explain how the validation notice and settlement fit together. *See Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

22. The unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offer in Exhibit A.

23. The consumer needs time to process the information contained in an initial debt collection letter before deciding whether to dispute, pay or take other action. This is the point of the 30 day period in 15 U.S.C. 1692g(a).

24. Prior to deciding whether to dispute a debt, a consumer may have to sort through personal records and/or memories to try to remember if the debt might be legitimate. She may not recognize the creditor – debts are freely assignable and corporations, especially banks, often change names.

25. Moreover, once a consumer sends a dispute in writing, the creditor is under no obligation to provide verification in any specific amount of time, or even to provide verification at all, so long as the debt collector ceases collection efforts until it does so. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997) ("Section 1692g(b) thus gives debt collectors two options when they receive requests for validation. They may provide the requested validations and continue their debt collecting activities, or they may cease all collection activities.").

4

Case 2:17-cv-00341-NJ    Filed 03/08/17    Page 4 of 11    Document 1

26. The § 1692g validation period lasts for 30 days. It is the consumer's right to *request* verification until the end of the thirty day period. If the request is not made until the end of the thirty day period, the verification request would not be processed, researched by the creditor, and returned to the consumer until long after settlement offer payment deadline has expired. The consumer would be left with no time to review the verification and determine whether to accept the settlement offer.

27. The unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offers in Exhibit A. The settlement offers in Exhibit A do not specify a deadline for acceptance, and thus Jefferson could revoke them at any time. *Kocinski v. Home Ins. Co.*, 147 Wis. 2d 728, 752-53, 433 N.W.2d 654, 664 (Ct. App. 1988) ("an offer can always be retracted or revoked before acceptance. Wisconsin common law reflects these basic legal concepts."). The consumer has an undeterminable amount of time to review the verification and determine whether to accept the settlement offer.

28. The effect of the settlement offer in the initial written debt communication is to discourage or prevent consumers (and specifically the unsophisticated consumer) from exercising their validation rights.

29. Defendant did not include explanatory language in Exhibit A, *see, eg. Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997).

30. In order to preserve the settlement offer in the event of a written dispute, and to preserve the 30-day validation period itself, any explanatory language should make clear that a dispute will extend the settlement offer while the debt collector is in the process of complying with its obligation to verify the debt, and that any settlement offer without a deadline will not be revoked until after the validation period expires.

31. There is no requirement that a consumer make a showing of materiality for a debt collector's failure to comply with 15 U.S.C. § 1692g(a). *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016) ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).").

32. For the purposes of Plaintiff's claims under 15 U.S.C. § 1692e, in general, false, misleading or confusing statements about the debt itself, or about the creditor's, debtor's or debt collector's rights or intentions, are all material. *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009).

33. The unsophisticated consumer would also be confused by the statements identified above stating that "[a]fter receipt of your payment(s), we will update your account to reflect as paid."

34. Two of the settlement offers ("Opportunity #1" and "Opportunity #2) are offers to settle the alleged debt for less than the full balance.

35. <u>Exhibit A</u>, as a whole, states that the account will be settled for less than the full balance upon Jefferson Capital's receipt of a payment amount that is less than the full balance of the alleged debt. But Jefferson Capital then states that it will update the account to reflect as "paid."

36. The language identified above is ambiguous and confusing, especially with respect to the "reflect as paid" phrase.

37. The unsophisticated consumer could not determine whether payment of the settlement amount would result in Jefferson Capital representing to credit reporting agencies that the account is paid in full, settled in full, or partially paid with outstanding balance.

38. An account reported to a credit reporting agency as "settled in full" has a greater negative effect on a consumer's credit score than an account reported as "paid in full." Thus, consumers who are able to pay off a balance may wish to pay the entire amount instead of settle for a smaller amount to effect an improvement in their credit score.

39. The language identified above is ambiguous and confusing, since the letter purports to offer a one-time payment for less than the "amount of the debt," a consumer cannot know if the debt will be considered settled or paid in full.

40. Plaintiff was confused by <u>Exhibit A</u>.

41. The unsophisticated consumer would be confused by <u>Exhibit A</u>.

42. Plaintiff had to spend time and money investigating <u>Exhibit A</u>.

43. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of <u>Exhibit A</u>.

44. The FDCPA presumes that violations cause injury to consumers. Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

45. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

46. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

47. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

48. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

## COUNT I – FDCPA

49. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

50. The settlement offers listed on Exhibit A conflict with and overshadow the debt validation notice, in that the offers demand a payment within the validation period or shortly thereafter, but do not explain how the validation notice and settlement "deadline" fit together. 15 U.S.C. § 1692g; *Bartlett*, 128 F.3d at 500.

51. Exhibit A is confusing, deceptive, and/or misleading to the unsophisticated consumer.

52. 15 U.S.C. § 1692g(b) states, in part:

(b) **Disputed debts**
…
Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

53. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692g.

## COUNT II--FDCPA

54. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

55. Exhibit A contains conflicting or apparently conflicting statements, offering settlement of the "amount of the debt" and "[a]fter receipt of your payment(s), we will update your account to reflect as paid."

56. The two statements identified above are ambiguous and confusing. The unsophisticated consumer could not determine whether Jefferson Capital would report the balance of the account as settled or paid in full after the consumer makes the offered "settlement" payment.

57. Reporting a debt as "settled for less than the full balance" has a more negative effect on the consumer's credit history and score than reporting a debt as "paid in full."

58. Defendant's letter misinforms consumers as to the consequences of settling their alleged debts for less than the current balance.

59. Jefferson Capital violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f and 1692f(1).

## CLASS ALLEGATIONS

60. Plaintiff brings this action on behalf of a Class consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between March 8, 2016 and March 8, 2017, inclusive, (e) that was not returned by the postal service.

61. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

62. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with 15 U.S.C. § 1692e, 1692f, and 1692g.

63. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

64. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

65. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

66. Plaintiff hereby demands a trial by jury.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: March 8, 2017

**ADEMI & O'REILLY, LLP**

By: /S/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Denise L. Morris (SBN 1097911)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
dmorris@ademilaw.com